IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN DOYLE,

        Plaintiff,

v.

STEPHEN RITZ, WEXFORD HEALTH
SOURCE, INC., and ANTHONY WILLS,

        Defendants.

Case No. 19-cv-1210-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Plaintiff Brian Doyle's motion for preliminary injunction (Doc. 16). Dr. Stephen Ritz and Wexford Health Sources, Inc. have filed a response (Doc. 30) to the motion. The current warden of Menard Correctional Center ("Menard"), Anthony Wills, also has filed a response (Doc. 46). The Court held an evidentiary hearing on June 10, 2020. After the hearing, both Doyle and Wexford submitted additional medical records for review (Docs. 51 and 53).

## BACKGROUND

On November 4, 2019, Doyle, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard, filed a Complaint alleging deliberate indifference in treating his chronic occipital infection, a scalp infection (Docs. 1 and 9). He has suffered with the condition for over twenty years and requires frequent dressing changes, antiseptic soaps, and antibiotic treatment (Doc. 9, p. 2). He alleges that he was recommended for treatment by a wound specialist and plastic surgeon. On-site

Page 1 of 6

physicians have submitted the referral, but Wexford and Dr. Ritz, Wexford's utilization manager, refuse to approve the referral (*Id*.). As a result, his condition continues to deteriorate, and the infection has spread from his scalp to his face. He also alleges that Defendants are aware of his need to be in a single-man cell in order to reduce his risk of infection (*Id*. at p. 2).

On March 2, 2020, Doyle filed a motion for preliminary injunction (Doc. 16) seeking to be single-celled. Doyle alleges that his infection is "super active" requiring multiple dressing changes a week due to drainage, and he is routinely admitted to the healthcare unit due to the infection (*Id*. at p. 1). Doyle believes he should be single-celled due to his infection. He notes that inmates in a cell must all use the same sink and are not provided with cleaning materials, placing him at risk of further infection (*Id*. at p. 2). He was previously housed in a single-man cell after a request was made to the placement office by Nurse Practitioner Lindsey, but he has since been moved to another cell (*Id*.; Doc. 1, p. 53). Lindsey no longer works at the prison and placement has informed Doyle that the medical staff do not know about his condition or need for a single-man cell (*Id*.). Doyle argues that medical staff know he needs a single-man cell, access to frequent showers, hygiene supplies, and cleaning supplies to control his condition (*Id*. at p. 3). Because he refuses to be housed in a cell with other inmates, he has been placed in segregation (*Id*. at pp. 3-4; Doc. 31).

Defendants argue that Doyle has not shown a likelihood of success on the merits. Wexford and Dr. Ritz further argue that Doyle has not shown that they had knowledge of his request to be in a single-man cell nor do they have any authority to provide Doyle with his requested relief. Wills argues that Doyle has not shown that there is a medical

need for a single-man cell. Defendants note that his condition has been ongoing for twenty years, and he has not needed to be single-celled. Nor has he demonstrated that his condition is exasperated by being celled with other inmates. He only offers his own belief that his condition could be controlled better in a single-cell, but no doctor has determined that being single-celled is necessary for treatment. His Complaint alleges that he wants to be in a single-man cell to limit conflicts with cellmates over the phone rather than for any medical purpose (*Id*. at pp. 17-18).

The medical records do indicate that Lindsey requested he be single-celled because Doyle complained that his current cellmate was not cleanly (Doc. 1, p. 53). Angela Crain, the Healthcare Administrator at Menard, testified in an affidavit that Lindsey did note his request for placement in a single-man cell but she did not indicate in the record that a single-cell was necessary nor did she fill out a single-man cell permit (Docs. 46-1, p. 1 and 46-2, p. 4).

On March 2, 2020, Doyle again requested to be in a single-man cell when he met with Nurse Practitioner Moldenhauer, informing him that he had a court order to be single-celled (Docs. 46-1, pp. 1-2; 46-2, p. 3). Moldenhauer, Dr. Siddiqui, and Angela Crain met and discussed Doyle's need for a single-man cell (*Id*.). They ultimately determined that there was "no medical reason for a single cell." (*Id*.). Moldenhauer also confirmed with Menard legal counsel that Doyle did not have a court order for a single cell (Doc. 46-2, p. 3). Doyle testified at the evidentiary hearing that he showed Moldenhauer the Court's merit review of this case, rather than a court order to be single-celled. Although medical personnel have the ability to issue certain permits, housing placement is an administrative decision and the prison does not have to honor permits for safety and

security reasons (Doc. 30, p. 6). On-site personnel can also place an inmate in isolation for infection control, but there is no evidence that has happened in this case (*Id.*).

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

   1. a reasonable likelihood of success on the merits;
   2. no adequate remedy at law; and
   3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

The Court finds that Doyle has not shown that he is likely to succeed on the merits of his claims as to his request to be placed in a single-man cell. Simply put, there is no evidence to suggest that single-celling Doyle is medically necessary. Doyle testified that he believes that he needs to be single-celled in order to prevent the spread of infection and to better keep his head cleaned, but he acknowledged that no doctor has told him that it is medically necessary. Nor has he received a permit or order from a doctor to be placed in a single-cell. His mere disagreement with medical personnel over whether he should be in a single-man cell does not amount to deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

Further, Moldenhauer testified that he examined Doyle in March of this year and does not believe that his condition requires a single-man cell at this time. His condition is contained, and the drainage is not such that it would pose a risk of infection to a cellmate. Moldenhauer met with Crain and Dr. Siddiqui to obtain a second opinion in order to make sure that his decision was correct. They all agreed that a single-cell placement was not medically necessary.

Although Doyle testified that he was previously diagnosed with MRSA (*see*

Doc. 53-1, p. 1; Doc. 51, p. 5), recent cultures from September 2019 show that Doyle does not currently have an infection (*Id.* at pp. 3, 5). On September 12, 2019, Doyle underwent an incision and drainage procedure (*Id.* at pp. 1-2). Although no fluid was found, a biopsy of the tissue was unremarkable and showed no active infection (*Id.* at pp. 3, 5-6, 9; Doc. 51, pp. 4, 7). The biopsy was consistent with a lipoma (*Id.* at pp. 5, 8-9; Doc. 51, p. 4). Doyle had an MRI on January 21, 2020, which showed non-specific soft tissue with no fluid collection (*Id.* at p. 10). Nothing in the recent medical records indicates that Doyle is currently suffering from an infection that would require isolation. Moldenhauer testified that even if Doyle suffered from an active infection, he would not need to be isolated unless the draining could not be contained. There is nothing in the records or the testimony which would indicate that Doyle needs a single-man cell. Because Doyle fails to offer any evidence beyond his own opinion that he should be in a single-man cell, the Court finds that he is not entitled to injunctive relief at this time.

## CONCLUSION

Accordingly, Doyle's motion for preliminary injunction (Doc. 16) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   June 18, 2020**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**